## Iovanella v. Lawrence County

*Daniel I. Herman,* for plaintiff.
*John W. Hodge,* for defendant.

CAIAZZA, *J.,* September 25, 1989 — The legal issue before the court is narrow in its scope. Have the Lawrence County Commissioners violated the provisions of the Sunshine Act, 65 P.S. §271 et seq.?

The relevant facts appear in the following sequence of events.

On November 4, 1988, the Lawrence County Board of Commissioners issued a media release stating that they had voted to close the Hill View Manor. The progeny of the press statement can be traced to a series of collective bargaining sessions which failed to produce a labor contract. During the course of the protracted negotiations a series of issues were discussed, including the difficulty experienced by the County of Lawrence in recruiting and maintaining patient care staff.

The major events which foreran the media release issued on November 4, 1988 are fundamentally not in dispute.

(1) A collective bargaining session was scheduled for November 4, 1988.

(2) The county was anticipating a formal response to its proposals submitted to the union in which it offered to buy out sick leave, utilize a new scheduling system, and provide special levels of compensation to direct care providers.

(3) The union presented a counterproposal which raised collateral bargaining issues.

(4) The county reacted by rejecting the union's approach as non-responsive to their proposal.

(5) A stalemate in the collective bargaining process was reached.

(6) When the position of the union was communicated by the county's negotiator to the Board of Commissioners, a decision was made by the commissioners to discontinue operating Hill View Manor as an intermediate care nursing facility.

Section 272 of the Sunshine Act appears as follows:

"§272. *Legislative findings and declaration* —

"(a) *Findings* — The General Assembly finds that the right of the public to be present at all meetings of agencies and to witness the deliberation, policy formulation and decisionmaking [sic] of agencies is vital to the enhancement and proper functioning of the democratic process and that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society.

"(b) *Declarations* — The General Assembly hereby declares it to be the public policy of this commonwealth to insure the right of its citizens to have notice of and the right to attend all meetings of agencies at which any agency business is discussed or acted upon as provided in this act." 65 P.S. §272.

Inherently there often exists a fragile tension between the republic and democratic forms of government. The framers of our system of government did not opt to entrust the survival of the new union of states to a pure democracy, as alluded to in the Sunshine Act. We are governed by a republic. Decisions are made by elected officials who receive the proxy of the people and we thus become bound by their judgment.

However, each citizen has both the right and the duty to have a voice in the decision-making process. Obviously, the exchanged dialogue cannot be belli-

cose. And the effect of the participation of the citizenry in the actual business of government and a meaningful consideration of its views produces an alliance, or partnership, which inherently advances a common good.

The ideal mixture will often produce a covenant between the government and its people that rests on a shared commitment to adequately satisfy, where possible, the needs of our society. Polarized views, which by their nature produce antagonism, should be discarded and the energy which is exerted to fight a worthy battle can then be used to advance a worthy cause.

Judges are usually at their worst when their decisions depart from an analysis of the law and their discussion strays to a consideration of social issues. While the methodology of the decision-making process should remain intact, some cases warrant a minor departure from the usual standard, especially where some nudging may effectuate a course of conciliation. Here, it does not appear that the decision of the Board of Commissioners was bottomed upon an impersonal intent to evict the residents of Hill View Manor. Following a series of management and patient care considerations, a firm determination was made to discontinue the operation of the Hill View Manor as a county-operated nursing home. However, a segment of the citizenry became equally firm in its resolve to maintain Hill View Manor as a viable facility. With undaunted perseverance, a course of action has been pursued aimed at shielding the Hill View Manor residents from the incertitude which they may suffer if the County of Lawrence disaffiliates itself from Hill View Manor. Their goal is clear — to preserve for the future the harborage offered by Hill View Manor.

Perhaps the view of the court is both rhetorical and utopian, but placed in juxtaposition, the goals of plaintiff — and those people he seeks to protect — seem in some meaningful fashion to parallel a responsibility of defendant. A detente of sort should be reached. The drawn swords should be turned into plowshares. The energy (and money) now being expended by both sides should be marshalled and then used to advance the common interest of caring for the infirm and the indigent of Lawrence County. We do have a moral commitment to serve each other. And that responsibility, which is not a cleverly concocted myth, should be honored by both the government and its people in some way. After all, we are only temporary caretakers of the turf we lay claim to as lawyers, clerks, doctors, laborers, commissioners and judges. Perhaps we should seize the opportunity.

## FINDINGS

The Sunshine Act, *supra,* defines a "meeting" in the following manner:

" 'Meeting.' Any prearranged gathering of an agency which is attended or participated in by a quorum of the members of an agency held for the purpose of deliberating agency business or taking official action." 65 P.S. §273.

It is clear from the evidence presented to the court that the November 4, 1988 meeting attended by the three members of the Board of Commissioners was a prearranged gathering held for the purpose of discussing information and formulating strategy relative to the collective bargaining agreement which the county was attempting to negotiate with the labor union which represented certain Hill View Manor employees. For that purpose alone it was appropriate for the meeting to be conducted in

executive session. Section 278(a)(2) of the Sunshine Act states as follows:

"(a) *Purpose* — An agency may hold an executive session for one or more of the following reasons:

"(2) To hold information, strategy and negotiation sessions related to the negotiation or arbitration of a collective bargaining agreement or, in the absence of a collective bargaining unit, related to labor relations and arbitration." 65 P.S. §278(a)(2).

However, following the disquieting attempt to reach a labor accord during the course of the executive session, the County Commissioners then "reached a decision that Hill View Manor must be closed." See November 4, 1988 press release issued by the Board of Commissioners. Their reasoning was "based on a number of factors, however, by far and away the most significant ones were the persistent inability of Hill View Manor to attract and maintain a qualified, skilled staff of employees, and concern for the quality of patient care." *Id.*

The act defines agency business in the following manner:

" 'Agency business.' The framing, preparation, making or enactment of laws, policy or regulations, the creation of liability by contract or otherwise or the adjudication of rights, duties and responsibilities, but not including administrative action." 65 P.S. §273.

To engage in a discussion during the course of an executive session which results in a decision to close a county-managed intermediate care nursing facility is a policy-making determination which falls within the definition of "agency business" and is, consequently, a violation of the Sunshine Act. The decision process utilized to close the facility was obviously based upon a series of considerations detailed in the November 4, 1988 press release. While each of the reasons advanced by the Board of

Commissioners to close Hill View Manor are collaterally attached to the aborted attempt to reach a labor accord, the consequences which may have been engendered by the failure to effectuate a collective bargaining agreement are matters that should have been discussed in detail during the course of a public meeting. It would be injudicious to conclude that the impetuous decision to close Hill View Manor following the breakdown of labor negotiations is authorized by a provision of the Sunshine Act which allows an agency to hold information, strategy and negotiation sessions related to the negotiation or arbitration of a collective bargaining agreement.

Next, the county asserts that even if a violation of the Sunshine Act occurred during the process of the November 4, 1988 meeting, the breach was cured by the subsequent meeting held on November 8, 1988. The court cannot place its imprimatur upon an illegal act, albeit inadvertent, merely because the county ratified its earlier decision at a subsequent meeting. To hold otherwise would vitiate the spirit of the Sunshine Act and encourage a broadening of the issues brought up for discussion during the course of an executive session. Pursuant to the provisions of the predecessor statute, the Open Meeting Law,[1] improper action which was taken by an agency could be ratified at a subsequent meeting which was properly constituted. The Sunshine Act is more strict in its standards. "Clearly, the new law protects the public's interest to witness agency discussions — not just the formal action. Thus, once a discussion has taken place at an invalid meeting, the public's interest is not rectified by mere ratification."[2]

Lastly, the county asks:

1. 65 P.S. §251-254.
2. 136 Pitts. Leg. J. 39 (1988).

"(1) What interpretation should be placed upon the command given in 65 P.S. §283 that: 'A legal challenge under this act shall be filed . . . within 30 days from the discovery of any action that occurred at a meeting which was not open at which the act was violated. . .?' "

Section 282 of the Sunshine Act fundamentally establishes a statute of limitations. A statute of limitations defense is an affirmative defense which must be pleaded in a responsive pleading under the heading "new matter." See Pa.R.C.P. 1030. A perusal of the pleading filed by the county reveals that the statute of limitations as a defense has not been raised.[3]

## CONCLUSIONS

The Board of Lawrence County Commissioners violated the Sunshine Act, 65 P.S. §271 et seq., by deciding on November 4, 1988 to close Hill View Manor.

The Board of Lawrence County Commissioners did not meet on November 4, 1988 with the intent and purpose of violating the Sunshine Act.

## DECREE NISI

Now, September 25, 1989, the actions of the Lawrence County Board of Commissioners relevant to the sale or closure of Hill View Manor adopted at the November 4, 1988 executive session are hereby declared to be invalid as being violative of the Sunshine Act, 65 P.S. §271, et seq.

---

3. The county refers us to the provisions of 42 Pa.C.S. §5522 which utilize the words "shall" and "must." There is no dispute that the statute cited by the county is a statute of limitation and not a legislative mandate. In the same fashion, the Sunshine Act utilizes a similar phrase, viz., "shall be filed."